381 So.2d 1038 (1980)
CAPITOL TOYOTA, INC., et al.
v.
Robert H. GERVIN.
No. 51665.
Supreme Court of Mississippi.
March 19, 1980.
Rehearing Denied April 16, 1980.
Fred A. Ross, Jr., Jackson, for appellants.
Thomas Price, Alston, Jones & Davis, Thomas W. Tardy, III, Jackson, J.E. Gervin, Jr., Chattanooga, Tenn., for appellee.
Before PATTERSON, C.J., and BROOM and COFER, JJ.
PATTERSON, Chief Justice, for the Court:
Robert H. Gervin filed a bill of complaint in the Chancery Court of the First Judicial District of Hinds County alleging that Capitol Toyota, Inc.'s oppressive conduct in operating the corporation entitled him as a minority shareholder to dissolve the corporation pursuant to Mississippi Code Annotated section 79-3-193 (1972). The court below ordered dissolution. We reverse and remand.
In July 1972, Robert Coleman and Herbert Polk incorporated Capitol Toyota, Inc., a retail car dealership in Jackson, with Robert Gervin as general manager. At the outset Coleman, Polk and Gervin orally agreed that Gervin would obtain a 25% ownership interest in the shares authorized, with the balance divided between Coleman and Polk. In October 1974, the parties reduced their oral agreement into a formal writing which, though variously characterized by the parties on this appeal, appears to be essentially a contract, signed by Gervin, Coleman and Polk. It provides that Gervin's 25% interest is subject to a condition, viz., that he be employed by Capitol at the time of the retirement of "all of [Capitol's] indebtedness except current monthly trade accounts payable." The indebtedness consisted of an unsecured $115,000 note to Deposit Guaranty National Bank, signed by Gervin, Coleman and Polk.
The intended effect of the agreement was to encourage Gervin's continued service as general manager of Capitol while implicitly imposing a duty upon Coleman and Polk to retire the Deposit Guaranty note in keeping with their duty, arising from the contract, to cooperate in bringing about the occurrence of that condition. See Williston on Contracts, 3rd Ed. § 887, pp. 426 et seq. Much testimony indicates the agreement *1039 had its intended effect. The record reveals that Gervin's management of Capitol was reasonably good, but not outstanding,[1] and that he remained with Capitol until November 30, 1976, when he was terminated by George Gear and Francis D. Hall to whom Coleman and Polk had previously "sold" the entire corporation and "assigned" the agreement of October 1974. Moreover, in January 1973, relying on the agreement and the probability that the indebtedness would be retired in due course, Gervin refused a prospective employer's offer of a substantially higher salary than he was making at Capitol.
Testimony concerning the ability of Capitol to retire the indebtedness conflicted and is complicated, because Coleman and Polk, the parties in interest, other than Gervin, to the October 1974 agreement, admitted they had the personal ability to retire the indebtedness at any time. The fact of their ability appears clearly from Capitol's unusual monthly expenditures for a yacht used by Polk for non-corporate purposes, as well as large bonuses and salaries paid from Capitol's earnings for questionable services rendered by Coleman and Polk. We therefore conclude that the condition (i.e., employment at retirement of the indebtedness) to Gervin's 25% interest should not be considered an absolute requirement, but should be evaluated with less stringency dependent upon the existence of extenuating circumstances. Indeed, appellants have conceded in oral argument the issue should be resolved on basic contract principles.
In our opinion, Gervin should not be deprived of all interest in the stock of Capitol even though he sought involuntary dissolution as a minority shareholder. Dissolution is an extraordinary remedy to be sparingly administered in exceptional cases only. See, e.g., Exadaktilos v. Cinniminson Realty Co., Inc., 167 N.J. Super. 141, 400 A.2d 554 (1979); Fix v. Fix Material Co., Inc., 538 S.W.2d 351 (Mo. App. 1976); Baker v. Commercial Body Builders, Inc., 264 Or. 614, 507 P.2d 387, 56 A.L.R.3d 341 (1973); Polikoff v. Dole & Clark Building Corp., 37 Ill. App.2d 29, 184 N.E.2d 792 (1962), noted, S1 Ill.B.J. 509 (1963). Under the circumstances so painstakingly reviewed in the briefs and revealed by the evidence, we find such exceptional factors lacking. In fact, we think to permit dissolution here would sanction retaliatory oppression of the majority by the minority, a result plainly contrary to the intended meaning of Mississippi Code Annotated section 79-3-193 (1972).
We find Exadaktilos v. Cinniminson Realty Co., supra, helpful in its reasoning opposing involuntary dissolution on the statutory ground of "oppression" where the complaining party's reasonable expectations have been thwarted, but not grossly so. Here, we only cite the language of the 1974 agreement reading "[i]f at any time after the ... indebtedness ... is retired, and if [Gervin] ceases to be employed by Capitol Toyota, Inc., for any reason whatsoever, then [Coleman and Polk] agree ... to acquire said share of stock [25%] at book value," and point to the evidence of Gervin's inadequate management of Capitol, to justify our refusal to compel dissolution. We accordingly limit Gervin's remedy to 25% of the book value of Capitol's stock at the time of his termination on November 30, 1976.
We are puzzled by the holding of the court below that the October 1974 agreement was "vitiated" by Coleman and Polk's attempt in 1976 to "assign ... all ... rights ... and obligations in" that agreement. We are of the opinion that the purported assignment operated as a delegation of performance of the 1974 agreement, making Gear and Hall answerable under it and leaving Coleman and Polk jointly and severally liable to Gervin as sureties by operation of law. Any question as to the rights and liabilities of Coleman, Polk, Gear and Hall inter se is not before *1040 us, and we therefore decline to reach it. In conclusion, we reverse and remand for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.
NOTES
[1] The record is replete with arguably supportable allegations of Gervin's mismanagement, including high volume but low profit sales records, missing parts, under-billing for services, etc. Capitol's profits increased remarkably following the Gear/Hall takeover, and it was at the time of trial financially healthy to say the least.