418 So.2d 58 (1982)
W. Howard KISNER, M.D., H. Vann Craig, M.D., William Calhoun, M.D., Margaret Veller, M.D., and Charles Martin, M.D.
v.
John D. COFFEY, M.D. and John J. Bennett, M.D., as Shareholders of and for and in Behalf of Natchez Medical Group, Inc.
No. 53334.
Supreme Court of Mississippi.
July 28, 1982.
Rehearing Denied August 25, 1982.
*59 David C. Bramlette, Adams, Forman, Truly, Ward, Smith & Bramlette, Natchez, for appellants.
John E. Mulhearn, Jr., Mulhearn & Mulhearn, Walter Brown and Joseph S. Zuccaro, Natchez, for appellees.
Before PATTERSON, C.J., and BOWLING and DAN M. LEE, JJ.
BOWLING, Justice, for the Court:
This appeal is from the Chancery Court of Adams County and involves a controversy among present and former members of a medical clinic.
Prior to 1966 the appellees, complainants below, Dr. John D. Coffey and Dr. John Bennett, were in a partnership known as Natchez Medical Clinic with appellants, defendants below, Dr. W. Howard Kisner, Dr. William Calhoun, Dr. Margaret Veller and Dr. John I. Davis. The latter in 1975 withdrew from the partnership and is not involved in this litigation. In 1966 the partnership consisted of the above named physicians and added thereto Drs. H. Vann Craig and Charles Martin. The partners organized a corporation under the laws of the State of Mississippi and issued stock to each partner on an equal basis. The purpose for organizing the corporation was for it to construct a building in Natchez and lease it to the members of the partnership. This was done and a twenty-year lease was executed on February 16, 1966, between Natchez Medical Group, Inc., as lessor, and Drs. Calhoun, Bennett, Kisner, Coffey, Davis and Veller as lessees. The rental for the lease recited the sum of $2,150 per month until and including March 1, 1986.
Dr. Coffey withdrew from the medical partnership in January 1978. Dr. Bennett withdrew in 1979. Dr. Craig withdrew shortly thereafter. This left as members of the partnership the above named five appellants.
On December 14, 1979, appellees, Coffey and Bennett, filed their bill of complaint against the individual appellants, alleging that appellants were not operating the corporation properly and that alternatively, the court should either require that a receiver take charge of the corporation or that the corporation be dissolved. The original complaint in addition to these alternative prayers for relief, further prayed for such other and different relief to which they might be entitled.
On April 11, 1980, appellees filed an amendment to the bill of complaint in which they further prayed that appellants *60 be enjoined from surrendering certain life insurance policies purchased by the corporation on the lives of the shareholders; that payment of any legal fees by the corporation to appellants be enjoined; and that the corporation and appellants be enjoined from charging less rent than $3,710 per month.
Appellants filed their answer which in effect denied that appellees were entitled to any relief requested.
It would serve no useful purpose to relate in detail all the testimony and evidence introduced at trial. It is mostly undisputed. The principal testimony pertinent to the decision of the cause is: The original by-laws of the corporation provided for four directors to be elected by the shareholders. Sometime after the relationship of the parties developed, a policy was adopted whereby all shareholders served as directors. This was done by mutual agreement and placed on the minutes of the corporation. On at least three occasions during the 1970's, the shareholders and the clinic partners, all the same people, agreed that the monthly rental paid by the clinic to the corporation be changed. At the time the cause was filed, this change had been set at $3,710 per month. It is practically undisputed that the changes in rent were made because of increased activities of the corporation such as purchasing life insurance policies on the lives of the shareholders, purchasing the stock of Dr. Davis upon his withdrawal and paying each shareholder $100 per month called "deferred compensation" and compensation for serving as a director.
At the trial and on this appeal, appellees have relied on Mississippi Code Annotated, Section 79-3-193 (1972), as to their contention for dissolution of the corporation. This section provides that the chancery court shall have full power to liquidate the assets and business of a corporation under certain conditions, one of which is that "the acts of the directors or those in control of the corporation are illegal, oppressive or fraudulent." It is admitted that none of the other conditions of this statute possibly could apply. Appellees contend that the operation of the corporation in question by the directors was "oppressive".
At the conclusion of the trial, the chancellor made several findings as follows:
He found that the actions of appellants in managing the corporation were "oppressive" under the terms of the statute for the reason that "There was such a conflict of interests that the conduct of the defendants in handling the corporate affairs became oppressive." This conduct according to the opinion of the chancellor consisted of Dr. Coffey and Dr. Bennett not being re-elected directors of the corporation after they withdrew from the medical clinic and that their deferred compensation of $100 per month was thereby terminated. We find no other substantial reason given by the chancellor for ordering that the corporation be dissolved in 1986 under the provisions of MCA § 79-3-193 (1972).
The chancellor found the lease executed February 16, 1966, between the parties is a valid and binding lease but ordered that the rental of $3,710 per month be continued on the legal ground of estoppel.
The court further ordered that the deferred compensation of all directors be equalized so that appellees receive payments that were not made after they withdrew from the clinic and after they were not elected directors under the by-laws, which then provided for only four directors.
The chancellor ordered that the corporation pay no legal fees to any party to the litigation. He further ordered that there be no expenditures of monies or payment of dividends by the corporation without the unanimous consent of the board of directors or stockholders.
The threshold assignment of error by appellants is the action of the court in ordering that the corporation be liquidated in 1986. It is contended that the evidence was not sufficient to justify the chancellor in holding that the action of the corporate directors was oppressive under the statute.
We should state here that after the suit was filed in December 1979, the shareholders of the corporation held a regular meeting *61 in January 1980 and properly amended the by-laws of the corporation to require that all shareholders be directors.
This Court has had before it questions as to the extent of corporate directors' actions that would make those actions "oppressive" under the statute and thereby require corporate dissolution. It is agreed by all that the chancellor specifically held that no actions of the directors were either illegal or fraudulent. In Capitol Toyota, Inc. v. Gervin, 381 So.2d 1038 (Miss. 1980), we said: "Dissolution is an extraordinary remedy to be sparingly administered in exceptional cases only." In reversing a corporation dissolution by the lower court, we relied on Exadaktilos v. Cinnaminson Realty Co., Inc., 167 N.J. Super. 141, 400 A.2d 554 (1979), and Baker v. Commercial Body Builders, Inc., 264 Or. 614, 507 P.2d 387, 56 A.L.R.3d 341 (1974). In Baker, supra, the Oregon court in discussing what is necessary to constitute oppressiveness under an identical statute as that before us, made the following observations:
In considering the meaning and application of the term "oppressive" conduct it is first to be noted that by the very terms of ORS 57.595 conduct need not be fraudulent or illegal to be "oppressive" within the meaning of that statute.
While general definitions of "oppressive" conduct are of little value for application in a specific case, perhaps the most widely quoted definitions are that "oppressive conduct" for the purposes of such a statute is:
"burdensome, harsh and wrongful conduct, a lack of probity and fair dealing in the affairs of a company to the prejudice of some of its members; or a visual departure from the standards of fair dealing, and a violation of fair play on which every shareholder who entrusts his money to a company is entitled to rely."
We agree, however, that the question of what is "oppressive" conduct by those in control of a "close" corporation as its majority stockholders is closely related to what we agree to be the fiduciary duty of a good faith and fair dealing owed by them to its minority stockholders.
Thus, an abuse of corporate position for private gain at the expense of the stockholders is "oppressive" conduct. Or the plundering of a "close" corporation by the siphoning off of the profits by excessive salaries or bonus payments and the operation of the business for the sole benefit of the majority of the stockholders, to the detriment of the minority stockholders, would constitute such "oppressive" conduct as to authorize a dissolution of the corporation under the terms of ORS 57.595.
On the other hand, it has been said that a single act in breach of such a fiduciary duty may not constitute such "oppressive" conduct as to authorize the dissolution of a corporation unless extremely serious in nature and that even a continuing course of "oppressive" conduct may not be sufficient for that purpose unless it appears that, as a result, there has been a disproportionate loss to the minority or that those in control of the corporation are so incorrigible that they can no longer be trusted to manage it fairly in the interests of its stockholders.
In other words, although a showing of "imminent disaster" is not required, liquidation is not available upon a showing of mere vague apprehensions of possible future mischief or injury or to extricate minority stockholders from an investment that turns out to be a bad bargain. We also reject the concept that a "close corporation" is like a partnership to the extent that a minority stockholder should have the same right as a partner to demand a dissolution of the business upon substantially the same showing as may be sufficient for the dissolution of a partnership. After all, the remedy of a forced dissolution of a corporation may equally be "oppressive" to the majority stockholders.
As we previously have seen, the sole reason given by the chancellor to order a future dissolution of the corporation was that in 1979 the shareholders, who then remained *62 in the clinic, did not re-elect appellees directors and that this interfered with their deferred compensation.
Although appellants list as an assignment of error the court's order equalizing deferred compensation benefits to appellees, it was stated in oral argument by appellants' attorney that no real objection was made to catching up with these payments now that appellees were again on the board of directors after a legal amendment to the by-laws. We accept statements in oral argument at their face value and find the action of the lower court in equalizing the deferred payments to appellees to be correct.
We are of the firm opinion that the chancellor was manifestly in error when he held that the evidence discussed above was sufficient for him to order a future dissolution of the corporation. The evidence did not rise to that of being "oppressive" as required under the statute.
We further are of the opinion that the lower court was in error in increasing the rent from that set out in the original lease. As hereinbefore stated, the agreed on increases and decreases were for the corporation to secure funds for specific purposes. This was in effect taking money out of one pocket and putting it in another to purchase insurance, stock of a withdrawing partner and other such expenses. The language of the lease is clear and in our opinion the chancellor was manifestly wrong in decreeing that the monthly rental should be that last agreed upon by the parties to the lease: to-wit, $3,710 per month.
Appellants further allege as error the court's action in prohibiting the corporation from paying the attorneys' fees incurred by appellants as individuals. In our opinion the court was entirely correct on this question and its decree in that regard should be affirmed.
In summary, we make the following findings:
1. The lower court was manifestly in error in ordering a dissolution of the corporation and its action in doing so is reversed and rendered.
2. The decree of the lower court in ordering that no expenditures of money or payment of individuals may be made without the unanimous consent of the board of directors is reversed and rendered.
3. The decree of the lower court in establishing the monthly rental at $3,710 per month is reversed and the monthly rental is ordered to remain according to the terms of the lease at $2,150 per month.
4. The decree of the lower court in prohibiting the corporation from paying attorneys' fees of any party to the suit is affirmed.
5. The order of the chancellor in overruling the general demurrer of appellants, or in the alternative not dismissing the cause at the close of appellees' evidence, is affirmed.
The above pronouncements dispose of all assignments of error propounded by the appellants. The cause is, therefore, affirmed in part, reversed in part and rendered.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.
PATTERSON, C.J., SUGG and WALKER, P. JJ., and BROOM, ROY NOBLE LEE, HAWKINS, DAN M. LEE and PRATHER, JJ., concur.