# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-CA-01098-SCT

*JOSEPH K. SPEETJENS, DR. FASER TRIPLETT,*
*et al.*

*v.*

*MALACO INC., et al.*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/05/2004 |
| TRIAL JUDGE: | HON. JASON H. FLOYD, JR. |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | AMANDA POVALL TAILYOUR |
| | GRADY F. TOLLISON, JR. |
| | T. ROE FRAZER |
| | EDWARD J. PETERS |
| ATTORNEYS FOR APPELLEES: | GLENN GATES TAYLOR |
| | DONALD JAMES BLACKWOOD, JR. |
| | CHRISTY MICHELLE SPARKS |
| | ALEX A. ALSTON, JR. |
| | TERRY R. LEVY |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 05/18/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**COBB, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     The Madison County Chancery Court, in the introduction of its findings of facts and final judgment, explained the procedural history of this case, as follows:

> The Joseph K. Speetjens, et al. versus Malaco, Inc., et al., cause of action was filed in the Chancery Court of Madison County, Mississippi on 11

April, 1997. The case was bifurcated and after hearing the first portion, involving a joint venture, final judgment was entered by the Court in 2001. In 2002, Dr. Triplett and others filed two separate actions in the Chancery Court of the First Judicial District of Hinds County, Mississippi. These complaints (Malaco II and Malaco III) assert the same claims as the first suit, and therefore, the Hinds County cases were consolidated with the initial Malaco case by Order dated November 24, 2003.

The cases were tried for five days in November of 2003. Defendants in the actions were Thomas J. Couch, Sr., Stewart Madison, Gerald Stephenson ([sic] the directors and officers of Malaco, Inc.; Northside partners, a partnership (NSP); Couch & Madison, a partnership (C&M); Couch, Grubman & Madison, a partnership (CGM); Burdette Russ; Tann Brown & Russ; Robert A. Malouf; Robert A. Malouf Law Firm; Alan J. Grubman; Select-O-Hits, Inc. (SOH); and Malaco, Inc. Profit Sharing Plan and Trust (Pension Plan). Prior to trial, each filed Motions for Summary Judgment. Select-O-Hits and the Pension Plan were dismissed at the beginning of the trial, while the remaining Motions were taken under advisement. At the conclusion of the Plaintiffs' case, the Court also dismissed the Defendants Burdgett (sic) Russ, Tan[n] Brown and Russ, Robert A. Malouf, Robert A. Malouf Law Firm, and Alan J. Grubman. Therefore, the only remaining action(sic) pending were the derivative claims asserted against Couch, Madison, and Stephenson, and the partnerships NSP, C&M, and CGM.

¶2. Finding that Speetjens was statutorily barred from suing derivatively, pursuant to Miss. Code Ann. section 79-4-7.42 (Rev. 2001) and all other claims were without merit, the trial court entered judgment dismissing the case. Speetjens subsequently filed a timely notice of appeal. We agree with the trial court's determination that the claims were statutorily barred, and because that determination is dispositive of this case, we affirm.

**FACTS**

¶3. The chancellor also provided detailed findings of fact, which we also include verbatim, as follows:

Malaco, Inc. was formed in 1968 by Thomas J. Couch, Sr. and Mitchell Malouf. Malaco stock was initially set at $2.50 per share and the

2

initial board of directors consisted of nine members, which included Couch and Stephenson. When the attendance of the board of directors decreased to a point where a quorum was no longer available, the number of members was gradually reduced to three, the Defendants, Couch, Madison, and Stephenson. They now remain the board of directors as well as the officers of the corporation. Together they own approximately 80% of Malaco's outstanding shares of stock.

The board conducted annual stockholder's meetings and furnished audited, financial statements to the stockholders each year. These financial statements disclosed the compensation paid to the officers, directors, and employees each year, and also contained notes concerning related party transactions.

At each annual shareholders meeting, the floor was opened for nominations to the board of directors. Until this lawsuit was first filed in 1997, the only shareholder's (sic) nominated for the board of directors were Couch, Madison, and Stephenson. Stockholder's attendance at these annual meetings was consistently low, generally between five or six, including board members. The amount of compensation paid to the officers, directors, and employees as disclosed on the financial statement was never questioned by any of the shareholders.

Malaco, Inc. is, and always has been, in the business of recording and selling primarily black gospel and rhythm and blues music. They sold pre-recorded music products such as cassettes, compact discs, and videos; and also licensed to third parties performance and recording music rights that it owned. Malaco initially had one studio located in the city of Jackson, Mississippi for the recording of its music products.

During the years after its inception, Malaco acquired several music interests. In 1986, Malaco acquired Savoy Records for approximately one (1) million dollars. Savoy, at the time was the oldest black gospel record company in the United States and owned thousands of "record masters", actual recorded products. This purchase was made by a combination of cash, bank financing, and assumption of Savoy's existing debts. Malaco immediately after the acquisition sold enough Savoy products to pay for half of the purchase price. This purchase was discussed in detail at Malaco's 1987 shareholder's meeting.

In 1996, Malaco, in an effort to acquire a distribution outlet for its records, acquired a 50% interest in Select-O-Hits, Inc. (SOH). Select-O-Hits was a record distributor that sold to retail outlets such as Wal-Mart, Be-Bop, etc. This purchase was disclosed in Malaco's annual audited financial statement for the year ending November 30, 1995, and also in Malaco's letter

3

to shareholders dated May 23, 1996. The shareholders agreed to waive any potential conflicts that this purchase may involve.

In 1992, Malaco purchased a small blues label called Waldoxy Records for the purchase price of $25,000. This label was formed by Thomas J. Couch, Jr., son of Thomas J. Couch, Sr. The investment was recouped by Malaco during the first year after its acquisition.

In 1989, Malaco attempted to branch out into country music. They opened an office in Nashville to sign writers and singers to record country songs. This effort was unsuccessful and the office was finally closed in 2003 after a total loss of approximately $500,000.00.

Occasionally it became necessary for Malaco to rent a recording studio located in Mussel Shoals, Alabama. It was called the Mussel Shoals Sound Studio, Inc. (MSS). They also recorded songs that were in the MSS publishing catalog and paid publishing royalties and studio rentals to MSS. In 1985, the owners decided to sell Mussel Shoals Studio. Malaco's directors were interested in buying the studio. The proposed sale price was in excess of one (1) million dollars. Malaco did not have this amount of money available. The directors sought to secure financing and contacted several banks in Jackson, Mississippi and also banks in Alabama. None of these banks were willing to lend money to Malaco without Couch, Madison, and Stephenson personally guaranteeing the loan. They were not willing to assume such a personal liability for Malaco.

After determining that Malaco, Inc. was unable to finance the purchase of MSS, the three directors decided they would personally attempt to buy MSS. They formed Northside Partners (NSP), which purchased MSS in August of 1985 for $1,050,000. This included the studio building, the recording equipment, and some publishing catalogs. The purchase was disclosed to the Malaco shareholders at the 1986 annual stockholders meeting where it was discussed by the directors and other stockholders, including the Plaintiff, Ed Butler.

In February of 1989, NSP sold the MSS building to Malaco for $300,000. Since this sale, Malaco has leased the building back to NSP for $2,000 per month, plus all taxes, repairs, and insurance. Malaco has collected in excess of $350,000 in rent with no expenses for taxes, insurance, repairs and improvements since the sale. The sale of the building to Malaco and the lease back to NSP was disclosed in each of Malaco's annual financial statements for the years ending November 30, 1989, November 30, 1990, and November 30, 1991.

In addition to the August 1985 purchase of MSS, NSP later acquired some smaller musical assets, but MSS constituted the vast majority of NSP's assets. On September 25, 1986, NSP acquired master recordings and

4

publishing catalogs known as "More of the Same Music", "Music and More", "Poncho Case Music", "Sure Been Good Music", and Aladrian Music". In June of 1989, NSP purchased "Southern Grand Alliance" and "Songs of the Grand Coalition" catalog. In July of 1990, NSP purchased catalogs of New Albany Music and Hoosia Music. On April 13, 1994, NSP purchased a catalog called "Most Urgent Music". None of these music catalogs were considered to be appropriate for Malaco. None were traditional black gospel music nor rhythm and blues music and they would not be considered to be a profitable investment for Malaco. Additionally, Malaco does not purchase just publishing catalogs.

In the early '80's, Thomas Couch and Stewart Madison formed the Couch and Madison partnership to invest in various financial opportunities such as oil and gas wells, horses, stocks, loans, and miscellaneous music interests. Over the years C&M partnership entered into a series of personal loans with Mr. Fredrick Knight, a songwriter and producer. Mr. Knight would use some of his musical assets as collateral to secure these loans, as he did with the purchase of a Mercedes Automobile. As a result of the nonpayment of these loans, C&M partnership acquired four sets of musical assets: the first two dated November 17, 1983; the third dated August 7, 1982; and, the fourth dated May 5, 1995. Since Malaco is not in the business of loaning money nor [were] the assets the type that Malaco recorded and sold. These assets were not considered to be a corporate opportunity for Malaco, Inc.

In January of 1990, C&M Partnership entered into an agreement with George Hocutt to purchase an undivided one-half interest in the "Best Music" and the "Apollo Records" catalog. This music also was not the type of music Malaco dealt in, and in addition, Mr. Hocutt refused to sell these items to Malaco. He did not want to have a corporation as a partner.

In May of 1990, the partnership of Couch, Grubman, and Madison was formed to purchase two small country music catalogs. These catalogs covered Leahrae Music and Brandwood Music. These are country music catalogs and were not the type that Malaco was interested in or desired to have. CGM also acquired the music composition "Careful Man". This composition had been recorded by Malaco and they began paying publisher's royalties to Mr. Jimmy Ginn. He was the owner of the song at that time but had a misunderstanding with Malaco over the payment of royalties.

As previously stated, the annual audited financial statements, which were sent to the shareholders each year, contained a section called "Selling, General, and Administrative Expenses". This section included all of the compensation paid to the officers and employees of Malaco, Inc. While it did not break out separately each officers annual compensation, the statement

5

was proper under generally accepted accounting principles. Although some of the stockholders were aware that this line entry included compensation paid to the officers, none ever inquired as to the individual amounts of compensation paid to the officers.

From 1992 to 1996, the officers and directors received more than a million dollars each in annual salaries and bonuses. Dividends were distributed to the shareholders in 1983 and every year between 1986 and 1996. The value of the stock of Malaco varied from as little as $1.50 per share to as much as $300 per share.

The Internal Revenue Service audited Malaco several times in the 1990s. In 1995, after conducting an audit, the IRS determined that the total compensation paid to the directors for the year ending 1992 was excessive in the amount of $125,000; and, for the year ending 1993, was excessive in the amount of $150,000. This finding was not contested by the directors and the taxes were paid based on that finding. No other annual compensation to directors was questioned by the IRS.

The three Defendants in this action performed all of the different job functions related to the recording, production, marketing, promotions, and numerous other functions required in the day to day operations of Malaco. The directors performed as many as fifteen (15) separate functions required in the operation of a recording company.

Speetjens[1] asserts on appeal that the chancellor committed manifest error by: (1) refusing to recognize a futility exception to the written demand requirement; (2) finding that certain claims were barred by the statute of limitations; (3) finding that Couch, Madison, and Stephenson did not breach their fiduciary duties; (4) dismissing the claims against Robert Malouf and the Malouf Law Firm; (5) dismissing the claims against Allen Grubman; (6) dismissing the claims against W. Burdette, Russ, and Tann, Brown and Russ Co., Ltd.; (7) refusing the request for a jury trial; and (8) failing to consider that sound public policy is dependent upon absolute trust in the officers and directors of publicly held corporations.

_____

[1]Appellants Joseph K. Speetjens; Dr. Faser Triplett; Dean Blackwell; Edwin C. Butler and Birney Imes will be referred to collectively as "Speetjens."

ANALYSIS

¶4.     A chancellor's findings of ultimate and evidentiary facts will not be disturbed on appeal if supported by substantial evidence. ***Longanecker v. Diamondhead Country Club,*** 760 So. 2d 764, 767 (Miss. 2000).  Further, the chancellor's findings will not be disturbed when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong or applied the incorrect legal standard.  ***Id.***

### I.     WHETHER THE CHANCELLOR ERRED BY REFUSING TO RECOGNIZE A FUTILITY EXCEPTION TO THE WRITTEN DEMAND REQUIREMENT

¶5.     Section 79-4-7.42 of Miss. Code Ann. (Rev. 2001) provides in its entirety:

No shareholder   may commence a derivative proceeding until:
(1) A written demand has been made upon the corporation to take suitable action; and
(2) Ninety (90) days have expired from the date the demand was made unless the shareholder has earlier been notified that the demand has been rejected by the corporation or unless irreparable injury to the   corporation would result by waiting for the expiration of  the ninety-day period.

¶6.     Whether a futility exception should be recognized in the application of this written demand requirement is a question of first impression before this Court.  It is undisputed in this case that no written demand  was ever made to Malaco to take suitable action. Speetjens nevertheless asserted that this derivative action should be allowed to proceed because the "[d]emand as required by Miss. Code Ann. 79-4-7.42 would have been futile" since the directors of Malaco "are in absolute control of the corporation and [they] unlawfully breached their fiduciary duties, usurped corporate opportunities and awarded themselves excessive salaries and extravagant bonuses."  Therefore, Speetjens argued,

7

demand was not a requirement for this action. Speetjens further argued that this Court has never ruled that the prerequisites of section 79-4-7.42 are mandatory for every derivative action. Malaco,[2] on the other hand, argued that the plain meaning of section 79-4-7.42 requires written demand in every derivative action suit. The chancellor heard these arguments and held that the shareholders lacked standing to bring this suit on behalf of Malaco because they did not first make written demand on Malaco to take suitable action. In his final judgment, the chancellor found section 79-4-7.42 to be an unambiguous requirement to derivative suits.

¶7.    On appeal, Speetjens first argues that other jurisdictions, including Delaware,[3] have held that in situations where demand is futile, as would be the case where all the directors are interested, written demand is excused. He also argues that the chancellor incorrectly relied upon *Longanecker,* 760 So. 2d 764, in which this Court affirmed the trial court's holding that shareholders who failed to make a written demand as required by Miss. Code Ann. section 79-11-193(3) (Rev. 2001) did not have standing to sue derivatively. Speetjens correctly notes that *Longanecker* construes Miss. Code Ann. section 79-11-193(3), which

---

[2] Appellees Malaco, Inc.; Thomas J. Couch, Sr.; Stewart M. Madison; Gerald B. Stephenson; Northside Partners; Couch and Madison Partnership; Couch, Madison and Grubman Partnership; Grubman Partnership; W. Burdette Russ; Tann Brown & Russ Co., Ltd.; Robert A. Malouf; Robert A. Malouf Law Firm; Allen J. Grubman; Malaco Inc. Profit Sharing Plan and Trust; Select-O-Hits, Inc. will be referred to collectively as "Malaco" throughout this opinion.

[3] Delaware's demand statute is materially different than Mississippi's. It expressly states that written demand is required *unless reasons are given explaining why this effort was not undertaken. See* Del. St. Ch. Ct. R. 23.1 (amended by court order effective February 1, 2006). The statute contained the same exception before the court-ordered amendment.

applies to non-profit corporations, whereas Malaco is a for-profit corporation. We agree with Malaco that this distinction is not controlling in the present situation. The wording of the two statutes differs. The requirement of a written demand in section 79-4-7.42 is absolute; the requirement in section 79-11-193(3) is conditional, stating that the complaint must "allege with particularity the demand made, if any, to obtain action by the directors and either why the complainants could not obtain the action or why they did not make the demand." This distinction inures to the benefit of Malaco.

¶8.     Speetjens also points to three places in *Longanecker* where this Court alluded to a futility exception to written demand. In the first instance, this Court was merely reciting the non-profit corporation's argument that the Longaneckers, who were shareholders, failed to show they made a written demand or *demand would be futile*. *Longanecker,* 760 So. 2d at 768. This Court did not say that a futility exception to the demand requirement exists. In the second instance, this Court cited cases in other jurisdictions which held a demand futility argument was not waived by a failure to raise it as an affirmative defense where the allegation was denied in a responsive pleading. *Id.* at 769 (citing *Renz v. Carota,* No. 87-CV-487, 1991 WL 165677, *2 (N.D.N.Y. 1991), *aff'd mem. sub nom. Renz v. Beeman,* 963 F.2d 1521 (2d Cir. 1992)). Speetjens misinterprets this statement. This Court was simply addressing the shareholders' argument that the appellee waived any objection to the derivative nature of this action by failing to raise it as an affirmative defense in its answer or by failing to raise it until the eve of trial. *Id.* at 768. This Court was not making any statement concerning a futility exception. Third, Speetjens cites *Longanecker* for the

9

proposition that "*generally* derivative plaintiffs must make written demand . . . ." *Id.* at 770. However there are other exceptions to written demand that do not involve futility: namely, where the shareholder has already been notified that demand has been rejected by the corporation, and where irreparable injury to the corporation would result. *See* Miss. Code Ann. § 79-4-7.42. Once again, Speetjens misinterprets this Court's language in *Longanecker.* Section 79-4-7.42 is clear on its face. "Where a statute is clear and unambiguous, no further statutory construction is necessary and the statute should be given its plain meaning." *Miller v. Meeks,* 762 So. 2d 302, 305 (Miss. 2000).

¶9. Determination of whether Miss. Code Ann. section 79-4-7.42 would be better if it contained an exception for futility, or even how other state courts have interpreted their comparable, but not identical, corporate law statutes is not required of us in the present case. The fact is, Mississippi's written demand statute does not contain an exception for futility, and unless and until the Legislature decides to include one, it does not exist. Further, this Court will not be alone in this holding. *See, e.g., McCann v. McCann,* 61 P.3d 585, 591-93 (Idaho 2002) (with the identical demand statute, the Supreme Court of Idaho ruled that there is no exception for futility); *Allen ex rel. Allen & Brock Constr. Co. v. Ferrera,* 540 S.E.2d 761, 765 (N.C. Ct. App. 2000) (the Court of Appeals of North Carolina held that the identical demand statute did not allow for a futility exception). *But see Guarino v. Livery Limited, Inc.,* No. X04CV030127824, slip op. at 2-3 (Conn. Super. Ct. Nov. 18, 2003); *with Tibball v. Galog,* No. CV94 0311149S, slip op. at 3 (Conn. Super. Ct. Aug. 25, 1994) (Connecticut courts have interpreted a futility exception into their demand statute, which

10

is identical to Mississippi's. However, the Connecticut courts have reached this result by citing to cases from other jurisdictions that have significantly different demand statutes).

¶10.    Hence, the trial court correctly found that "[s]ome jurisdictions have recognized a futility exception to the written demand prerequisite for filing a derivative action but Mississippi, however, has never recognized a futility exception to the statutory written demand requirement, and this Court will not attempt to fashion one here." We agree with the chancellor's sound reasoning. The demand requirement provides an opportunity to correct objectionable actions, without the expense of litigation, and it allows directors and managers to be alerted to and consider the shareholders' position. Although we thoroughly reviewed all issues presented, our determination that Speetjens failed to comply with the statutory requirements is dispositive, and thus we decline to address the other issues.

## CONCLUSION

¶11.    We affirm the judgment of the chancery court. There is no futility exception and Speetjens' claims are statutorily barred.

¶12.    **AFFIRMED.**

**SMITH, C.J., WALLER, P.J., CARLSON AND DICKINSON, JJ., CONCUR. DIAZ AND GRAVES, JJ., DISSENT WITHOUT SEPARATE WRITTEN OPINION. EASLEY, J., DISSENTS WITH SEPARATE WRITTEN OPINION. RANDOLPH, J., NOT PARTICIPATING.**

11

**EASLEY, JUSTICE, DISSENTING:**

¶13.     The majority does not recognize a futility exception to corporate demand. Under the facts at hand, I must respectfully disagree and write briefly to address my concerns as well as other issues raised in the appeal.

¶14.     This Court in ***Beckett v. Planters' Compress & Bonded Warehouse Co.***, 107 Miss. 305, 65 So. 275, 276 (1914), applied the legal principle that the law does not require a party to perform a "vain" or "fruitless" action. In ***Beckett***, a stockholder sued Planters' and its directors for investing capital stock in an ice and cold storage plant without his consent. *Id.* The venture failed, and Planters' had to liquidate all its property to settle its indebtedness. *Id.* These actions resulted in the corporations' inability to distribute anything to the shareholders. *Id.* This Court noted the basis of the directors' demurrer. The directors' argued that (1) there was no indication that suit would not have been filed had an application been made to the shareholders, and (2) Beckett never sought to have the alleged wrongs redressed by them or the corporation. *Id.* This Court did not agree with the directors' argument. This Court held:

> It is true that ordinarily, before a stockholder can maintain a suit of this character, he must exhaust all reasonable means within his reach to obtain redress within the corporation itself; and should the directors, when requested, decline to institute the suit, an appeal, if practicable, should be made to the stockholders themselves to take such action as they may deem proper and have the power to do. From the allegations of this bill, however, **it appears that the offending directors themselves either own or control the majority of the stock of the corporation, so that an appeal either to the directors or to the stockholders for redress was not necessary, for it is not to be expected that under such circumstances any redress would**

12

**have been granted, and the law never imposes upon any one the doing of a vain and fruitless thing.**

*Id*. (Emphasis added).

¶15.    Here, the facts are similar to those in *Beckett*. Couch, Stephenson, and Madison are the *sole members of the Board of Directors* and *sole corporate officers* of Malaco. **These three members own over 85% of the corporate shares.** One of the officers, Stephenson, testified that he would **not have sued the corporate officers/directors if a demand had been made by the minority shareholders.** Therefore, any demand by Speetjens would have been "fruitless" or "vain" as recognized by this Court in *Beckett*.

¶16.    The three corporate officers/directors breached their fiduciary duty to the corporation and the shareholders. The record reflects that the three directors of Malaco paid themselves 88% of the *gross* profits as officer compensation from 1987 to 1996. In 1992, 1995, and 1996, the three officers each received an average of over $1 million in compensation and bonuses. In 1989, 1990, 1991, 1993, 1994, 1997, 1998, and 1999, each of the three officers received an average of over $500,000 in compensation and bonus with many of these years averaging almost $600,000 or more in annual compensation.

¶17.    Directors and officers stand in a fiduciary relationship to a corporation and its shareholders. *Derouen v. Murray*, 604 So. 2d 1086, 1092 (Miss. 1992). This Court in *Derouen* further held:

> We begin with some basics. Officers and directors have well defined duties owed to the corporation they serve and, equitably, to its shareholders. In the first place, an officer or director owes the corporation a duty of care, a duty

13

to perform the officer's or director's functions in good faith, in a manner that he or she reasonably believe to be in the best interest of the corporation, and with the care that an ordinarily prudent person would reasonably be expected to exercise in a like position and under similar circumstances.

*Id*. In *Kisner v. Coffey*, 418 So. 2d 58, 61 (Miss. 1982), this Court found that the "plundering of a 'close' corporation by the siphoning off of the profits by excessive salaries or bonus payments" is equivalent to oppressive conduct. This Court further held that "the question of what is 'oppressive' conduct by those in control of a 'close' corporation as its majority stockholders is closely related to what we agree to be the fiduciary duty of a good faith and fair dealing owed by them to its minority stockholders." *Id*.

¶18. Couch, Madison, and Stephenson, the officers and directors of Malaco, had the majority of Malaco shares, over 85%, to control the election of the Board of Directors. These individuals owed a fiduciary duty to the minority shareholders of Malaco. These three individuals had the power, majority corporate shares, and self-appointed roles of being both officers and directors of Malaco. Therefore, Couch, Madison, and Stephenson were in control of setting their own salaries and any bonuses. These facts placed them in an unusual situation. The Plaintiffs allege that these individuals earned as much as 50%, 67%, 98% and 104% of gross profits in certain single years. The excessive salaries paid to the officers/directors drained corporate profits for their personal gain. Therefore, Malaco did not have the financial means to avail itself of corporate opportunities to benefit the corporation and its shareholders.

14

¶19.     The officers/directors owed a fiduciary duty to the corporation and its shareholders. The payment of the excessive salaries and bonuses consistently drained Malaco of corporate funds year after year. Malaco was unable to take advantage of business opportunities that these three officers diverted to their individually owned companies. Had the officers/directors not diverted such excessive compensation and bonuses, then Malaco would have been in a better position to avail itself of more business opportunities. The actions by the officers/directors were abuses of their corporate positions.

¶20.     The officers/directors paid themselves a significant amount of the corporate gross profits. This case reeks of corporate greed and breach of fiduciary duty. I would reverse the trial court's ruling that the officers and directors did not breach their fiduciary duty by raiding 88% of the gross profits to pay themselves excessive compensation. Accordingly, I would reverse the trial court's judgment and remand this case for further proceedings.